| | | |
|---|---|---|
| **EL PUEBLO DE PUERTO RICO**<br><br>Recurrido<br><br>v.<br><br>**ALEXANDER TORRES VEGA**<br><br>Peticionario | KLCE2024001294 | ***CERTIORARI*** procedente del Tribunal de Primera Instancia, Sala Superior de **Mayagüez**<br><br>Caso Núm.:<br>**ISCR200705118**<br><br>Sobre: Art 404 SC |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 27 de enero de 2025.

Comparece ante este Foro, Alexander Torres Vega (Torres Vega o peticionario) y solicita que revisemos la *Resolución y Orden* que emitió el Tribunal de Primera Instancia (TPI), Sala Superior de Mayagüez, el 25 de octubre de 2024, notificada el 29 de octubre de 2024. Por medio del dictamen recurrido, el foro *a quo* declaró *no ha lugar* la solicitud de devolución de fotos y huellas presentada por el peticionario.

Por las razones que expondremos a continuación, se deniega la expedición del auto de *certiorari* solicitado.

## I.

Según surge del expediente, en abril de 2008, la Administración de Servicios de Salud Mental y Contra la Adicción (ASSMCA) certificó que Torres Vega cumplió con el tratamiento correspondiente y el TPI dictó Sentencia por la convicción de un delito menos grave, al palio del Artículo 404 C de la Ley de Sustancias Controladas. A la fecha de octubre de 2023, el Negociado

de la Policía de Puerto Rico emitió un Certificado Negativo de Antecedentes Penales referente a Torres Vega.

Posteriormente, Torres Vega instó una *Petición* juramentada ante el foro de instancia, conforme la Ley Núm. 45 del 1 de junio de 1983, *infra* (Ley Núm. 45). En esta solicitó que se ordenara al Superintendente de la Policía de Puerto Rico a eliminar y/o devolver sus fotografías y huellas dactilares por haber transcurrido aproximadamente 16 años desde que se impuso la pena y por no existir circunstancias especiales que ameritaran su conservación. Añadió que, al no ser acusado, ni señalado de delito alguno durante todo ese tiempo procedía su petitorio. Adujo que la retención por parte de la Policía podría constituir, mientras no se devuelvan, una invasión de su derecho a la intimidad.

El Ministerio Público se opuso a lo anterior, bajo el fundamento de que la solicitud de Torres Vega no cumplió con lo dispuesto en la Ley Núm. 45. Así, argumentó que, si bien era cierto que Torres Vega cumplió con el tratamiento y el Tribunal dictó Sentencia por la convicción de un delito menos grave, según dispone la Ley de Sustancias Controladas, éste no fue absuelto ni indultado, excepciones bajo las cuales procedería la devolución de fotos y huellas. Precisó que las fotos y huellas sirven para la aplicación de una posible reincidencia, además de que constituyen instrumentos investigativos indispensables que son parte de la base de datos de la Policía de Puerto Rico. En suma, el Ministerio Público resaltó que el uso de las huellas digitales como forma de identificar a las personas y la toma de fotografías son procedimientos usuales y necesarios para la labor de la Policía en protección de la seguridad pública y en la persecución del crimen. Evaluadas ambas posturas, el TPI denegó la solicitud de Torres Vega.

En desacuerdo, Torres Vega recurre ante nos en recurso de *certiorari* y plantea que el Tribunal de Primera Instancia cometió el siguiente error:

> Erró el Honorable Tribunal de Primera Instancia al declarar NO HA LUGAR la solicitud de devolución de fotos y huellas de la defensa, a pesar del Ministerio Público no haber demostrado un interés apremiante en la retención de estas, según resuelto por el Honorable Tribunal Apelativo recientemente en el caso Ramón Luis Santiago Cora, Ex Parte KLCE202301002. Violentando así el derecho a la intimidad del aquí peticionario.

A tenor con la Regla 7 (B)(5) del Reglamento del Tribunal de Apelaciones, este Foro puede "prescindir de términos no jurisdiccionales, específicos," escritos, notificaciones o procedimientos adicionales, "con el propósito de lograr su más justo y eficiente despacho...".[1] Ante ello, prescindimos de la comparecencia de la Oficina del Procurador General, en representación del Pueblo de Puerto Rico.

## II.

### A.

El recurso de *certiorari* es el mecanismo procesal idóneo para que un tribunal de superior jerarquía pueda enmendar los errores que cometa el foro primario, sean procesales o sustantivos. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023); *León v. Rest. El Tropical,* 154 DPR 249 (2001).

Sin embargo, distinto al recurso de apelación, la expedición del auto de *certiorari* está sujeta a la discreción del foro revisor. La discreción consiste en una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión ecuánime. Ahora bien, no significa poder actuar en una forma u otra, haciendo abstracción del resto del derecho, porque, ciertamente, eso

---

[1] 4 LPRA Ap. XXII-B, R. 7 (B)(5).

constituiría un abuso de discreción. *García v. Padró*, 165 DPR 324, 334-335 (2005).

Así, para que este Foro pueda ejercer con mesura la facultad discrecional de entender, o no, en los méritos, una petición de *certiorari*, la Regla 40 del Reglamento del Tribunal de Apelaciones enumera los criterios que viabilizan dicho ejercicio. En particular, la referida Regla dispone lo siguiente:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

Los criterios antes transcritos nos sirven de guía para poder, de manera sabia y prudente, tomar la determinación de si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). De no encontrarse presente alguno de los criterios anteriormente enumerados en un caso ante nuestra consideración, no procede nuestra intervención.

Además, es importante enfatizar que todas las decisiones y actuaciones judiciales se presumen correctas y le compete a la parte que las impugne probar lo contrario. *Vargas v. González*, 149 DPR 859, 866 (1999).

**B.**

Como es sabido, la toma de fotografías y huellas dactilares constituye una práctica aceptable como parte de la labor investigativa de la policía y es permisible por su doble propósito de identificar al imputado como la persona que incurrió en el acto delictivo y ayudar a su procesamiento si reincidiere. *Pueblo v. Torres Albertorio*, 115 DPR 128, 130 (1984); *Archevaldi v. E.L.A.*, 110 DPR 767, 771 (1981).

Por su parte, la Ley Núm. 45 del 1 de junio de 1983, 25 LPRA sec. 1154, según enmendada, en su Art. 4, intitulado **Absolución del imputado; devolución**, dispone lo siguiente:

> Cualquier persona a la que se le impute la comisión de un delito grave o menos grave producto de una misma transacción o evento que **resulte absuelta luego del juicio correspondiente, o por orden o resolución del tribunal o toda persona que reciba un indulto total y absoluto del Gobernador, podrá solicitar al tribunal la devolución de las huellas digitales y fotografías**. El peticionario notificará al Ministerio Público y de éste no presentar objeción dentro del término de diez (10) días, el tribunal podrá ordenar, sin vista, la devolución solicitada. De haber objeción del Ministerio Público, el tribunal señalará vista pública a esos efectos. (Énfasis nuestro).

En *Pueblo v. Torres Albertorio*, supra, a la pág. 135, el Tribunal Supremo de Puerto Rico expuso que:

> La retención por la Policía de las fotografías y huellas dactilares tomadas a una persona **que es luego exonerada de delito**, aparte de constituir, por su posible divulgación, un factor que afecta a la persona en múltiples aspectos de su vida económica y en sus oportunidades educativas y de empleo, podría constituir, mientras no se le devuelvan, una invasión de su derecho a la intimidad. **La arbitraria retención de dicha información deja de tener significación cuando la persona es exonerada de delito, a menos que se la quiera mantener para señalarle en el futuro como posible autor de otros o parecidos delitos.** (Énfasis nuestro).

Referente a la Ley Núm. 45, el Tribunal Supremo continuó expresando en *Pueblo v. Torres Albertorio*, supra, a la pág. 136:

> La medida parece dejar a la discreción del tribunal la decisión sobre devolver **al imputado absuelto** las huellas digitales y fotografías tomadas. Ante el

reconocimiento constitucional de la inviolabilidad de la dignidad del ser humano y del derecho a la protección de su intimidad -Art. 11, Secs. 1 y 8 de la Constitución- tal discreción no puede ejercerse livianamente. **Podrá denegarse la solicitud sólo cuando se justifique cumplidamente ante el tribunal mediante prueba convincente, que existen circunstancias especiales que ameriten que la Policía conserve, en cuanto a la persona afectada, las huellas digitales y fotografías que le hubieren sido tomadas.** (Énfasis nuestro).

### III.

En su recurso, el peticionario nos invita a que revoquemos la determinación del Tribunal de Primera Instancia que denegó su solicitud de devolución de fotos y huellas dactilares tomadas durante el proceso penal que se llevó a cabo en su contra. Centra su discusión en la *Sentencia* dictada por un Panel Hermano de este Foro en el caso KLCE202301002[2]. Aduce que en el caso de autos el Estado no justificó, mediante prueba convincente, la intención de conservar bajo su custodia los documentos concernidos, salvo de catalogarlos como "un instrumento investigativo indispensable" y una herramienta adecuada "para investigar y combatir la criminalidad". Añade que las razones del Estado para la retención son esenciales, toda vez que crearían un balance entre la seguridad pública, los derechos constitucionales de los ciudadanos afectados y el interés de promover una verdadera rehabilitación con legislación que motive dicho propósito. En cuanto a lo planteado sobre la reincidencia, el peticionario resalta que no existe posibilidad de

---

[2] A grandes rasgos, en la *Sentencia* dictada el 13 de diciembre de 2023, el Panel Hermano de este Tribunal de Apelaciones pronunció lo siguiente:

> Recalcamos que, en este caso, no existe posibilidad de aplicar en contra del peticionario la reincidencia, por haber transcurrido más de veinticinco (25) años desde que él cumplió su sentencia, sin cometer un delito ulterior. Dictaminamos que, el derecho del Estado a retener el fichaje de las personas -que cumplieron su sentencia y que no han delinquido posteriormente- caduca al vencer el término de 10 años que establece el Artículo 74, *supra*, sobre reincidencia. Por ello colegimos que, en cumplimiento con el estatuto vigente y con la intención legislativa antes expuesta, dentro del periodo de 10 años subsiguientes al cumplimiento de una sentencia, permanece en vigor el interés apremiante del Estado de retener las fotos y huellas dactilares para los propósitos reconocidos en la legislación antes expuesta. Sin embargo, transcurrido dicho término de caducidad, se extingue la posibilidad de usarlo en su contra.

aplicarla porque no ha cometido delito alguno desde que cumplió su pena y por haber transcurrido más de 16 años desde dicho cumplimiento.

Luego de un análisis del expediente del caso, colegimos que no le asiste la razón al peticionario, por lo que no intervendremos con el pronunciamiento del foro *a quo.*

Según el texto de la Ley Núm. 45 y su jurisprudencia aplicable, se le concedió discreción al Tribunal para denegar una solicitud de devolución de fotografías y huellas dactilares, aun en las circunstancias en que un acusado haya sido absuelto o indultado. En esos casos, debe justificarse mediante prueba convincente la procedencia de la denegatoria, es decir, el interés apremiante del Estado para conservar las huellas y fotografías. De no existir justificación y prueba categórica, procede la entrega de los mencionados documentos ante una posible violación al derecho a la intimidad de la persona que no resultó convicta.

Ahora bien, **según nuestro estado de derecho actual**, en casos como el de autos, en el **cual el peticionario no fue absuelto ni indultado**, sino que resultó convicto y cumplió su pena por infracción a la Ley de Sustancias Controladas, no procede la devolución de las fotografías y huellas. Ello, porque dicha información es útil para futuros fines investigativos y para salvaguardar la seguridad pública. Véase, *Archevaldi v. E.L.A.,* supra, pág. 771. Sin embargo, la aludida documentación debe permanecer estrictamente confidencial en la base de datos del Negociado de la Policía de Puerto Rico para su uso exclusivo. Así las cosas, la información concernida no será divulgada a terceras personas, por lo que no podría afectar la vida y/o las oportunidades educativas y de empleo del peticionario.

En vista de lo expuesto, la solicitud del peticionario no procede, y el foro *a quo* actuó correctamente al denegarla.

## IV.

Por los fundamentos que anteceden, se deniega la expedición del auto de *certiorari*. Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

La Juez Barresi Ramos concurre con el resultado sin opinión escrita. La Jueza Rivera Marchand disiente mediante opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

| EL PUEBLO DE PUERTO RICO<br><br>Recurrido<br><br>v.<br><br>ALEXANDER TORRES VEGA<br><br>Peticionario | KLCE202401294 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm.: ISCR200705118<br><br>Sobre: Art 404 SC |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

## VOTO DISIDENTE DE LA JUEZA RIVERA MARCHAND

En San Juan, Puerto Rico, a 27 de enero de 2025.

Muy respetuosamente disiento de la determinación mayoritaria que deniega la expedición del auto de *certiorari*. Luego de evaluar sosegadamente la causa instada, concluyo que, el foro primario incidió al declarar no ha lugar, a la petición instada. Lo antes, en su aspecto procesal, así como sobre los méritos de la causa.

El señor Alexander Torres Vega (señor Torres Vega) cumplió la *Sentencia* emitida en su contra (en abril de 2008) por un delito menos grave, según las disposiciones del Artículo 404 C de la Ley de Sustancias Controladas de Puerto Rico[1]. Cabe destacar que, el foro

---

[1] Artículo 404. — Penalidad por posesión, libertad a prueba y eliminación de récords por primer delito. 24 LPRA sec. 2404(c).
    (a) [...]
    (b)(1) [...]
    c) Antes de dictar sentencia a cualquier persona hallada culpable de violar el inciso (a) de este artículo, bien sea después de la celebración de un juicio o de hacer una alegación de culpabilidad, el tribunal, a solicitud de tal persona, ordenará a un proveedor de servicios autorizado por la Administración de Servicios de Salud Mental y contra la Adicción que la someta a un procedimiento evaluativo de naturaleza biosicosocial, el cual será sufragado por dicha persona convicta, salvo que sea indigente. Dicho proveedor de servicios le rendirá un informe al tribunal dentro de los treinta (30) días siguientes a la orden. El informe incluirá los antecedentes e historial de la persona convicta en relación al uso de sustancias controladas y los resultados de las pruebas, con sus recomendaciones. Si a base de dicho informe y del expediente del caso, el tribunal determina que la persona convicta no representa un peligro para la sociedad, ni que es adicta a sustancias controladas al punto que necesite de los servicios

sentenciador certificó que, el señor Torres Vega, cumplió con el tratamiento reconocido y establecido por nuestro ordenamiento jurídico en la Administración de Servicios de Salud Mental y Contra la Adicción (ASSMCA). Lo antes, en aras de promover y lograr la rehabilitación de usuarios de sustancias controladas. Transcurridos los términos requeridos, según las disposiciones de la Ley para Autorizar a la Policía de Puerto Rico la Expedición de Certificados de Antecedentes Penales, Ley Núm. 254 de 27 de julio de 1974, según enmendada (Ley Núm. 254-1974), 34 LPRA sec. 1725 *et seq.*, y a petición del señor Torres Vega, el Negociado de la Policía emitió un certificado negativo de antecedentes penales, el 3 de octubre de 2023. Posteriormente, el señor Torres Vega, solicitó al Tribunal de Primera Instancia que ordenara al Superintendente de la Policía devolver sus huellas dactilares y fotografías al amparo de la Ley Núm. 45 de 1 de junio de 1983, Ley de Huellas Digitales y Fotografías por Delito Grave (Ley Núm. 45-1983), 25 LPRA sec. 1151 y ss. Ello,

---

de un programa de rehabilitación, podrá, con el consentimiento del Ministerio Público, dictar resolución imponiéndole pena de multa no menor de mil dólares ($1,000) ni mayor de diez mil dólares ($10,000) y pena de prestación de servicios a la comunidad hasta un máximo de seis (6) meses. Además, el tribunal ordenará al convicto que tome, a su costo, un curso de orientación preventiva contra el uso de sustancias controladas en cualquier proveedor de servicio reconocido por la Administración de Servicios de Salud Mental y contra la Adicción.

En caso de que la persona convicta sea indigente o no pueda satisfacer la totalidad de la multa impuesta o de los procedimientos evaluativos o de orientación ordenados, el tribunal podrá establecer un plan de pago. También podrá autorizar el pago o amortización, total o parcial, de la multa mediante la prestación de trabajo o servicios en la comunidad, abonándose cincuenta dólares ($50) por cada día de trabajo, cuya jornada no excederá de ocho (8) horas diarias.

La disposición sobre la pena de prestación de servicios a la comunidad será puesta en ejecución por la Administración de Corrección y la Oficina de la Administración de los Tribunales, de acuerdo a la reglamentación pertinente.

El tribunal conservará jurisdicción concurrente junto a la Administración de Corrección sobre la persona convicta, a fin del cumplimiento de las penas impuestas. En conformidad, el tribunal apercibirá a la persona convicta que de violar cualquiera de las condiciones impuestas por éste o cualquiera de las disposiciones de esta ley durante el cumplimiento de dichas penas, será sentenciada conforme lo dispuesto en el inciso (a) de este artículo; abonándole la multa pagada y el tiempo de servicio comunitario prestado, a razón de cincuenta dólares ($50) por cada día de reclusión y un (1) día de reclusión por cada día de servicios prestados, respectivamente.

Una vez la persona convicta satisfaga la pena impuesta bajo este inciso y someta evidencia de haber aprobado el curso de orientación preventiva, el tribunal dictará sentencia como delito menos grave, entendiéndose que la pena ha sido satisfecha.



por entender que, habían transcurrido 16 años desde que cumplió su sentencia y luego de haber acreditado su rehabilitación en ASSMCA sin cometer delito alguno durante dicho periodo. El Ministerio Público se opuso al petitorio, por entender que, el Estado tenía derecho de reservar las huellas y las fotos del señor Torres Vega por razones investigativas y para imputarle posible reincidencia por la comisión de delito.

Ahora bien, el foro primario, sin celebrar una vista, denegó la solicitud del peticionario. En particular consignó en el dictamen recurrido lo siguiente: "Atendidos los documentos titulados Petición de Devolución de Fotos y Huellas y Oposición A Solicitud de Entrega de Fotos y Huellas, presentadas el Tribunal dispone lo siguiente: No Ha Lugar a la solicitud." (Énfasis suplido). Incidió en su proceder.

De una lectura del Artículo 4 de la Ley Núm. 45-1983, *supra*, surge que:

> Cualquier persona a la que se le impute la comisión de su delito grave o menos grave producto de una misma transacción o evento que resulte absuelta luego del juicio correspondiente, o por orden o resolución del Tribunal o toda persona que reciba un indulto total y absoluto del Gobernador, podrá solicitar al Tribunal, la devolución de las huellas digitales y fotografías. El peticionario notificará al Ministerio Público y de este no presentar objeción dentro del término de diez días, el Tribunal podrá ordenar, sin vista, la devolución solicitada. **De haber objeción del Ministerio Publico, el Tribunal señalará vista pública a esos efectos**. 25 LPRA sec. 1154. [Énfasis nuestro]

De manera que, al no ser un asunto de índole discrecional, se violentó el debido proceso de ley del señor Torres Vega, en su aspecto procesal, al no celebrar la vista requerida. El estatuto establece que, de haber objeción del Ministerio Público, el Tribunal debe señalar una vista pública.[2]

Por otra parte, al justipreciar los méritos de la causa instada, se concluye que, el foro primario cometió el error en derecho

---

[2] Al revisar el expediente y nuestros sistemas (SIAT y en consulta con la Secretaria del Tribunal de Apelaciones y la Coordinadora de Sistemas Confidenciales), colegimos que, el TPI no celebró una vista en este caso.

señalado. A esos efectos, procede adoptar lo resuelto por un panel hermano en el recurso número KLCE202301002.[3] Los fundamentos que a continuación se elaboran y se incorporan del referido dictamen, sustentan la postura disidente sobre los méritos del caso y controversia.

En primer lugar, la Ley Núm. 254-1974, según enmendada, *supra,* sobre la eliminación de antecedentes penales, tiene un propósito incuestionable de estimular la rehabilitación de una persona. Ante ello, transcurrido determinado periodo de tiempo y cumplida la sentencia impuesta, una persona puede lograr, por determinación judicial que, se borre la existencia de sus previas convicciones, al emitir una certificación a esos efectos. Sin embargo, el Estado limita la efectividad de dicha certificación al retener las fotografías y huellas dactilares por tiempo indefinido. Lo antes, con el propósito de tener una base de datos para sostener sus poderes investigativos, ante la eventualidad de imputar reincidencia contra una persona que, según el certificado, no tiene antecedentes penales. No obstante, se observa una incongruencia entre los estatutos aplicables, ante el escenario de que esos documentos (huellas y fotografías) no sean útiles para imputar la reincidencia. Es decir, al transcurrir el término que establece el Artículo 74(a) de la Ley Núm. 146-2012, conocida como el Código Penal de Puerto Rico, 33 LPRA sec. 5107, ya el Estado no tendría autoridad para imputar la reincidencia.

Ciertamente, durante el periodo en que se permite imputar la reincidencia, el Estado goza de un interés de conservar tales fotografías y huellas dactilares. Ahora bien, una vez vence el referido término y emitida la certificación que demuestra que no tiene antecedentes penales, ¿la persona recobra su expectativa de



---

[3] Panel compuesto por la Jueza Cintrón Cintrón, Presidenta, voto disidente sin escrito; la Jueza Rivera Marchand (Jueza Ponente) y el Juez Rodríguez Flores.

intimidad? ¿Y al caducar el término para imputar la reincidencia es irrazonable el interés apremiante del Estado sobre esa persona? Procede determinar si la conservación de fotos y huellas de forma perpetua en determinadas circunstancias transgrede los parámetros de razonabilidad, violentando así el derecho a la intimidad.

De un examen cuidadoso de la Ley Núm. 45-1983, *supra,* se desprende que, el legislador autorizó expresamente la devolución de las fotografías y huellas dactilares a personas que fueron indultadas o que resultaron absueltas de delito. A su vez, dicho estatuto no excluye cualquier otro escenario. Añádase a ello que, no se debe propiciar determinaciones que resulten en conflicto con la intención legislativa que ha prevalecido durante los pasados cuarenta años, de aprobar medidas que faciliten la reincorporación en nuestra sociedad de quienes previamente infringieron la ley y los estimulen a no volver a delinquir.

Para sustentar lo anterior, es preciso señalar que, en *Pueblo v. Torres Albertorio,* 115 DPR 128 (1984), el Tribunal Supremo reconoció que, si la Policía retiene las fotografías y huellas dactilares de una persona que fue exonerada de delito, puede afectar su vida económica, educativa y laboral, e incluso, puede invadir su derecho a la intimidad, mientras no le sean devueltas. Sobre el particular abundó, "[l]a arbitraria retención de dicha información deja de tener significación cuando la persona es exonerada de delito, a menos que se la quiera mantener para señalarle en el futuro como posible autor de otros o parecidos delitos." *Pueblo v. Torres Albertorio,* supra, pág. 135. El Tribunal Supremo añadió que, una solicitud de devolución de huellas dactilares y fotografías podrá denegarse si el Estado justifica, mediante prueba convincente, que existen circunstancias especiales que ameritan su retención. *Íd.,* págs. 136-137.



Es de notar y del expediente surge que, transcurridos los términos que establecen nuestro Reglamento, el Estado no ha comparecido ante esta Curia para exponer su postura sobre el recurso instado y así informar las circunstancias especiales que sustentan la retención, si alguna.

De otra parte, al abordar la forma de adjudicar una controversia de esta índole hay que someterla a un análisis de escrutinio estricto, a los fines de decidir si debe prevalecer el interés del Estado de proteger la seguridad pública y su facultad investigativa *vis a vis* el derecho a la intimidad del peticionario, quien hace 16 años cumplió una sentencia por un delito menos grave. En atención a ese balance que debemos alcanzar, procede analizar si el interés público de investigar a una persona (que tiene un certificado negativo de antecedentes penales a su favor), para posiblemente imputarle alguna reincidencia, debe ceder una vez transcurren los 10 años para que a esa persona se le reconozca su expectativa de intimidad, así como, su derecho a proteger su vida privada y evitar ataques abusivos a su honra. En *Pueblo v. Falú Martínez,* 116 DPR 828, 837 (1986), el Tribunal Supremo le reconoció el derecho a la intimidad a los propios confinados que aún no habían completado su condena. Ello, por entender que, el derecho a la intimidad es consubstancial al principio de inviolabilidad de la dignidad del ser humano y no es un derecho abstracto. En particular determinó que nuestra Constitución, aunque tuvo a la federal por modelo, se fraguó en época reciente y ha podido ser más explícita en cuanto al reconocimiento de derechos en lo que respecta a la Constitución federal. Por ello, podemos ir más allá de las fronteras limitativas de la jurisprudencia federal.

En *Weber Carrillo v. ELA et al.,* 190 DPR 688, 700 (2014), el Tribunal Supremo expresó que, el derecho a la intimidad goza de la más alta jerarquía en nuestro ordenamiento constitucional y aplica

*ex propio vigore* (citando a *López Tristani v. Maldonado* 168 DPR 838, 849 (2006); *Arroyo v. Rattan Specialites Inc.*, 117 DPR 35, 64 (1986)). Allí, al expresarse sobre el poder investigativo del Estado determinó que, el ejercicio de tal autoridad no queda al margen de los postulados constitucionales que informan nuestro ordenamiento.

En este caso, no existe posibilidad de aplicar en contra del peticionario la reincidencia, por haber transcurrido más de dieciséis (16) años desde que él cumplió su sentencia por un delito menos grave, sin cometer un delito ulterior. El derecho del Estado a retener el fichaje de las personas -que cumplieron su sentencia y que no han delinquido posteriormente- caduca al vencer el término de 10 años que establece el Artículo 74 del Código Penal *supra,* sobre reincidencia. Por ello se colige que, en cumplimiento con el estatuto vigente y con la intención legislativa antes expuesta, dentro del periodo de 10 años subsiguientes al cumplimiento de una sentencia, permanece en vigor el interés apremiante del Estado de retener las fotos y huellas dactilares para los propósitos reconocidos en la legislación antes expuesta. Sin embargo, transcurrido dicho término de caducidad, se extingue la posibilidad de usarlo en su contra. Añádase a ello que, según lo resuelto en *Pueblo v. Galindo González,* 129 DPR 627 (1991), transcurrido el término de 10 años, tampoco se podría utilizar convicciones anteriores y/o récord penales anteriores para impugnar credibilidad por resultar remotas, sin valor probatorio alguno, lo cual conlleva su exclusión automática de una prueba a presentarse.

Además, es de notar que, el lenguaje de la Ley Núm. 45-1983, *supra,* otorga discreción a los tribunales para autorizar la devolución de las huellas y fotografías a aquellos imputados que resultaron absueltos de delito. Así lo interpretó el Tribunal Supremo en *Pueblo v. Torres Albertorio,* supra, pág. 136, al indicar que "[l]a medida parece dejar a la discreción del tribunal la decisión de



devolver al imputado absuelto las huellas digitales y fotografías tomadas."[4]

Basado en lo anterior, procede resaltar que, en este caso, el Estado no nos ha puesto en posición de identificar circunstancias especiales para sustentar su postura. Añádase que, un certificado negativo de antecedentes penales demuestra la misma información -la ausencia de un récord penal- sin distinguir, si la persona fue absuelta, fue indultada o si recibió el certificado por motivo de una resolución emitida por el tribunal, según autoriza la Ley Núm. 45-1983. Conforme a la normativa antes expuesta, existe un deber del Estado de justificar -mediante prueba convincente- las razones para retener las fotografías y huellas, en aras de crear un balance entre la seguridad pública y los derechos constitucionales de los ciudadanos afectados y el interés de promover una verdadera rehabilitación que motive dicho propósito. Limitar categóricamente la devolución de las fotografías y huellas dactilares a personas que fueron indultadas o absueltas conllevaría establecer que, la consecuencia legal de borrar un expediente criminal es parcial, con efectos únicamente civiles.[5]

Resulta ilustrativo lo expresado por el Tribunal Supremo en *Pueblo v. Ortiz Martínez*, 123 DPR 820 (1989), y conforme a las normas de hermenéutica antes reseñadas, procede su aplicación a la presente causa. Aunque dicho caso atiende una solicitud de sentencia suspendida, allí, el Sr. Ortiz Martínez se declaró culpable de violar la Ley de Armas de Puerto Rico, por lo cual, cumplió 18 meses de cárcel, sujeto al régimen de sentencia suspendida. Al cabo



---

[4] Véase, además, J.J. Álvarez González, <u>Derecho Constitucional de Puerto Rico y Relaciones Constitucionales con los Estados Unidos</u>, Bogotá, Editorial Temis S.A., 2010, pág. 773

[5] Véase *Pueblo v. Ortiz Martínez*, supra. A lo antes también añadimos que nos persuade lo resuelto por un panel hermano en *Pueblo v. Sierra Bermúdez* (KLAN20160644), así como en *Ex parte Sánchez Torres* (KLCE201000425). De nuestra búsqueda en el Registro de Transacciones para Tribunales (TRIB) no surge que los referidos dictámenes hayan sido objeto de revisión judicial ante el Tribunal Supremo.

de 18 años, se declaró culpable de dos delitos menos grave bajo la Ley de Armas de Puerto Rico. Así las cosas, el Sr. Ortiz Martínez solicitó nuevamente los beneficios de una sentencia suspendida. En apoyo a su petitorio, suministró un Certificado Negativo de Antecedentes Penales expedido por el Superintendente de la Policía, junto a varias cartas de vecinos y compañeros de trabajo que acreditaban su sentido de responsabilidad y buen carácter. En respuesta, el TPI denegó su solicitud, por entender que, la convicción anterior lo descalificó automáticamente de los beneficios de sentencia suspendida, a tenor de la Ley Núm. 259 de 3 de abril de 1946, Ley de Sentencia Suspendida y Libertad a Prueba, 34 LPRA secs. 1026 *et seq*. Ante la solicitud del Sr. Ortiz Martínez, el Tribunal Supremo revocó al foro impugnado y resolvió que, una convicción previa -que fue eliminada del Certificado de Antecedentes Penales- no constituye un impedimento para que este pudiese solicitar los beneficios de sentencia suspendida. En su análisis, nuestro más Alto Foro expuso:

> [d]e ese modo, logra plena virtualidad la filosofía consagrada en la ley --congruente con un enfoque moderno de rehabilitación-- de que el peticionario nunca fue acusado ni convicto del delito. Ciertamente, tanto el procedimiento judicial como el trámite administrativo establecidos [sic] en la ley vienen a llenar una laguna y a remediar una situación de injusticia que pesaba sobre aquellos ciudadanos que años atrás incurrieron en delitos, pero que después han mantenido una conducta ejemplar en nuestra sociedad. Como consecuencia de ese trámite, los tribunales no pueden tomar en consideración las convicciones así borradas. No puede darse la anomalía de que mientras de un lado el Superintendente de la Policía certifica negativamente, por otro lado, el tribunal acuda a sus archivos para resucitar esas convicciones. *Pueblo v. Ortiz Martínez*, supra, págs. 831-832.

En resumen y atinente a la presente causa, no surge del expediente que, transcurrido el término de caducidad para imputar la reincidencia, el Estado haya demostrado circunstancias especiales, superior al derecho que cobija al peticionario a que se respete y se proteja su intimidad. En el presente caso, el peticionario cumplió su sentencia por un delito menos grave y, tras 16 años sin

haber vuelto a delinquir, le fue eliminada la convicción por un delito menos grave de su expediente criminal. A su vez, el Estado tiene un interés de combatir la criminalidad y de proteger la seguridad pública. De hecho, no se alberga duda de que, ante los estatutos vigentes, dicho interés permanece en todo su vigor y se sobrepone al derecho de intimidad de la persona que haya cumplido su sentencia por el término de 10 años subsiguientes a dicho cumplimiento. Sin embargo, transcurrido el referido periodo de caducidad, ese interés del Estado interfiere con el derecho fundamental del peticionario a la intimidad. En su consecuencia, resulta necesario aplicar el escrutinio estricto, a modo de que, el Estado demuestre que, en aras de salvaguardar su interés apremiante, era necesario retener el fichaje del peticionario.[6]

Tras realizar el análisis de rigor constatamos que, a una persona que cumplió su sentencia hace más de 16 años, que no es susceptible de incurrir en reincidencia debido al tiempo transcurrido desde su convicción previa, que no ha vuelto a delinquir, que goza de buena reputación y a quien le fue eliminada la convicción de su récord penal, tiene un derecho a la intimidad que puede verse afectado, mientras la Policía retenga sus fotografías y huellas dactilares. A lo antes se añade que, en su única comparecencia ante el foro primario, el Estado no precisó cuál es la justificación para retener tales documentos, salvo catalogarlos como algo necesario para la labor de la policía en protección de la seguridad pública y para fines de la aplicación de la reincidencia.[7] Entiéndase que, el Estado no demostró circunstancias especiales o que su interés supere el escrutinio constitucional estricto ante las circunstancias particulares del caso ante nos. Ciertamente, el escrutinio y el balance justiciero resultaría distinto si no hubieran



---

[6] Véase además lo resuelto en *U.S. v. Kalish* 271 F.Supp. 968 (DC Puerto Rico).
[7] Véase, *Oposición a solicitud de entrega de fotos y huellas.* Apéndice, Anejo III.

pasado más de 10 años desde el cumplimiento de la sentencia ya que, durante dicho periodo, el Estado retiene la facultad, la autoridad y el deber de procesar posibles reincidencias en cumplimiento de nuestro ordenamiento jurídico.

A la luz de lo esbozado y ante las circunstancias particulares de este caso, concluyo que, el error señalado se cometió, por lo que se reúnen los criterios al amparo de la Regla 40 de nuestro Reglamento, *supra,* que justifican la expedición del auto de *certiorari* y revocación de la *Resolución* recurrida.

Por todo lo antes, respetuosamente disiento.


**MONSITA RIVERA MARCHAND**
**JUEZA DE APELACIONES**